IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD O'REGAN and ANA VIQUEZ
as Parents and Natural Guardians of L.O.,
        Plaintiffs

vs.                                                  No. 24->>

CENTRAL BUCKS SCHOOL DISTRICT,
        Defendant

## EMERGENCY MOTION OF PLAINTIFFS EDWARD O'REGAN AND ANA VIQUEZ, AS PARENTS AND NATURAL GUARDIANS OF L.O. FOR A PRELIMINARY INJUNCTION

Plaintiffs Edward O'Regan and Ana Viquez, as Parents and Natural Guardians of L.O., by and through their attorney, David S. Dessen, Esquire, move this Court for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, and in support thereof, incorporates the averments set forth in their Complaint and the accompanying Memorandum of Law.

**WHEREFORE**, Plaintiffs Edward O'Regan and Ana Viquez, as Parents and Natural Guardians of L.O., pray that this Court grant their Motion for a Preliminary Injunction and issue an Order precluding the Central Bucks School District and its servants, agents, workmen and employees from conducting any grievance proceeding or other proceeding to adjudicate alleged violations of Title IX of the Education

Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*. alleged to have taken place on Central Bucks School District bus 357 between September 16, 2024 and September 27, 2024.

**DESSEN, MOSES & ROSSITTO**

Dated: December 5, 2024  By: */s/ David S. Dessen*
DAVID S. DESSEN, ESQUIRE
Attorney ID # 17627
Attorney for Plaintiffs

600 Easton Road
Willow Grove, PA  19090
(215) 496-2902
ddessen@dms-lawyer.com

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD O'REGAN and ANA VIQUEZ
as Parents and Natural Guardians of L.O.,
    Plaintiffs

    vs.        No. 24->>

CENTRAL BUCKS SCHOOL DISTRICT,
    Defendant

**MEMORANDUM OF LAW IN SUPPORT OF THE EMERGENCY MOTION OF PLAINTIFFS EDWARD O'REGAN AND ANA VIQUEZ, AS PARENTS AND NATURAL GUARDIANS OF L.O., FOR A PRELIMINARY INJUNCTION**

    **I.    INTRODUCTION**

Plaintiffs Edward O'Regan and Ana Viquez (hereinafter collectively referred to as "O'Regan") are the parents and natural guardians of L.O., a male 10th grade student enrolled in Central Bucks High School – South (hereinafter referred to as "high school"), a high school operated and maintained by Defendant Central Bucks School District (hereinafter referred to as "School District"). The events underlying the matter now before this Court began in September 2024.

The School District provides bus transportation in the afternoon to take L.O. home from school on bus 357. In addition to L.O., 10th grade students D.F and J.F. who are brothers and 10th student R.W., a male, ride on the bus with G.R, a 19 year old woman who has Down's Syndrome.

On September 23, 2024, while sitting next to D.F., G.R. allegedly tried to kiss D.F. and said she was pregnant with D.F.'s baby. When D.F. rebuffed G.R.'s advances, G.R. allegedly punched D.F. in the groin. L.O. is alleged to have used his cell phone to record part of the altercation between G.R. and D.F. None of the students on the bus

have filed a complaint alleging that they had been harassed or discriminated against because of sex with regard to the September 23, 2024 incident.

On or about October 1, 2024, J.F. told Erin Scholl, his education support teacher, about the September 23, 2024 incident on bus 357 as well as about various other incidents on bus 357 in which G.R. was involved. The next day, October 2, 2024, Ms. Scholl sent an email summarizing her conversation with J.F. to Jennifer Opdyke, the high school Class of 2027 House Principal.

After reading Ms. Scholl's email, Ms. Opdyke spoke with J.F., D.F. and G.R. as well as with their parents. During the interviews with Ms. Opdyke, neither J.F., D.F., G.R. nor any of their parents alleged that any student was discriminated against or harassed because of their sex as a result of anything that occurred on bus 357.

On October 4, 2024, Ms. Opdyke began to review video footage of the events on bus 357 beginning with events that occurred on September 16, 2024. Also, on October 4, 2024, Ms. Opdyke spoke with Becky Stern and Special Education Supervisor Ron Lock. At Mr. Lock's suggestion, Ms. Opdyke contacted Alyssa Wright (hereinafter referred to as "Wright"), the School District Title IX Coordinator.

Wright determined that the incident on bus 357 should be investigated under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* (hereinafter referred to as the "Title IX proceeding").

On October 18, 2024, after reviewing additional video footage of events that took place between September 16, 2024 and September 27, 2024 on bus 357, and conducting additional interviews with students and parents, Ms. Opdyke completed the School District's Reporting Form for Discrimination, Bullying and Harassment in violation of

4

School District Policies 104 and 108.  In the form, Ms. Opdyke alleged that G.R., D.F. and J.F. had discriminated and harassed each other on the basis of age, sex and disability. A copy of the Reporting Form for Discrimination, Bullying and Harassment is attached hereto as "Exhibit "A."

On October 18, 2024, O'Regan received via email a Notice of Complaint Received from Wright.  A copy of the Notice of Complaint Received is attached hereto as Exhibit "B."

In the Notice, Wright informed O'Regan that:

> [T]the District received a report of conduct on October 2, 2024, that could potentially constitute unlawful sex-based harassment. Your child, L.O. was named as a **RESPONDENT**, meaning that your child may be responsible for violating the policy prohibiting sex-based harassment. The report indicates that the name of the targeted student, called the **COMPLAINANT**, is G.R., who is a student at CB South. The other parties are D.F., J.F. L.O. and R. W. who are students at CB South.

The Notice alleges that:

> L.O. was observed engaging in conversation about the incident, cursing loudly, and appeared to be video recording an interaction between G.R. and D.F. Additionally, he was also observed on bus footage discussing with another peer that he had a video of one of the incidents in question and proceeded to show the video to that peer.

On October 2, 2024, the School District did not receive a complaint from G.R. that L.O. had discriminated or harassed her because of her sex.

In an email dated November 5, 2024, Kalani Linnell, Esquire, counsel for the School District, stated that the School District viewed the October 18, 2024 Notice from Wright as initiating a Title IX proceeding in which G.R. is a Complainant against L.O., D.F., J.F. and R.W. and in which L.O., D.F., J.F. and R.W. are each a Complainant

5

against G.R. A copy of Ms. Linnell's November 5th email is attached hereto as Exhibit "C." On November 18, 2024, Michael Raffaelle, Esquire, counsel for G.R. wrote, on behalf of Ilene Young, Esquire, counsel for D.F. and J.F and undersigned counsel, to advise the School District that in their collective opinion, counsel believed it was, among other things, improper for the School District to pursue the individual claims alleged against the students in one proceeding. A copy of Mr. Raffaelle's November 18th letter is attached hereto as Exhibit "D." Counsel for the School District responded the same day and stated that because, according to the School District, L.O., D.F., J.F., and R.W. acted in concert to target G.R. relating to her disability, and because G.R. displayed her inappropriate conduct to all the students at the same time, "the decision-maker needs to understand the full scope and totality of the circumstances to make a rational decision." A copy of Ms. Linnell's November 18th letter is attached hereto as Exhibit "E."

On November 14, 2024, the School District sent O'Regan a document setting forth the School District's proposed informal resolution of the pending Title IX proceeding. Among other things, the proposed informal resolution of the pending Title IX proceeding would discipline L.O. by imposing a 2 day out-of-school suspension. A copy of the School District's proposed informal resolution is attached hereto as Exhibit "F."

Under the grievance process to resolve the alleged Title IX violations adopted by the School District, a single decision-maker will decide each of the male student's claims against G.R. and G.R.'s claims against each of the male students.

In an email dated December 5, 2024, counsel for the School District advised that pursuant to the grievance process, parties have until December 12, 2024 to pose questions

to other parties that the School District deems relevancy and permissible.  A decision will be made no later than January 8, 2025.

L.O. has a legally protected liberty and property interest in a school record free of reports of discipline imposed by the School District.

For the reasons more fully set forth below, this Court should issue a preliminary injunction because L.O. will   suffering irreparable harm if the School District is permitted to proceed with the current alleged Title IX proceeding and its proposed grievance process because the Title IX investigation is unlawful and the grievance process does not afford L.O. the level of procedural due process required by the due process clause of the *Fourteenth Amendment* .

## II.     ARGUMENT

### A.     THE ONGOING TITLE IX NVESTIGATION IS UNLAWFUL.

As defined in 34 C.F.R. 106.30, a "Complainant" in a Title IX proceeding is "an individual who is alleged to be the victim of conduct that could constitute sexual harassment."[1]

"Sexual Harassment" is defined as conduct on the basis of sex that satisfies one or more of the following:

(1)     An employee of the recipient conditioning the provision of an aid, benefit, or service of the recipient on an individual's participation in unwelcome sexual conduct;

(2)     Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity; or

---

[1] The cited definitions appear in § 1601.30 of the Final Regulation adopted May 19, 2020.

7

(3) "Sexual assault" as defined in 20 U.S.C. 092(f)(6)(A)(v),
"dating violence" as defined in 34 U.S.C. 12291(a)(10),
"domestic violence" as defined in 34 U.S.C. 12291(a)(8),
or "stalking" as defined in 34 U.S.C. 12291(a)(30).

A Title IX grievance procedure may only be instituted after the School District receives a "formal complaint" that has either been filed by the complainant or signed by the Title IX Coordinator, alleging sexual harassment against a respondent and requesting that the School District investigate the sexual harassment allegation.

When the School District receives a formal complaint, the regulations require the School District to investigate the allegations made by the complainant. If the School District decides to initiate a formal grievance process to resolve the allegations made by the complainant, the School District must provide the respondent with a notice containing the information set forth in § 106.45(b)(1) of the regulations. However, 34 C.F.R. 106.45(b)(2)(B) prohibits the School District from interviewing any party before providing the § 106.45(b)(1) notice to the respondent.

The evidence is clear that none of the parties involved in the events on school bus 357 described in Wright's October 18, 2024 email to O'Regan had provided a formal complaint to the School District alleging that they had been or were being sexually harassed on bus 357. Rather, Ms. Opdyke, after reviewing the information related by J.F. to Ms. Scholl and speaking with Wright, decided *sua sponte* to conduct what the School District now untruthfully and unlawfully contends is an investigation of a formal complaint of alleged sexual harassment made under Title IX. As a result, the School District has notified O'Regan and L.O that they must participate in a formal grievance process to resolve Ms. Opdyke's allegation that L.O sexually harassed G.R .and be

8

subject to discipline if the decision-maker concludes, by a preponderance of the evidence, that L.O. sexually harassed G.R.

O'Regan and L.O. will suffer irreparable harm if they are forced to participate in the sham Title IX proceeding created by the School District.  Other than an Order from this Court enjoining the School District from proceeding with the ongoing formal grievance proceedings, O'Regan and L.O. have no way to challenge the School District's determination that the ongoing proceedings are a valid exercise of the investigatory obligations and disciplinary authority granted to the School District by Title IX.

### B. THE GRIEVANCE PROCESS ADOPTED BY THE SCHOOL DISTRICT DENIES L.O. PROCEDURAL DUE PROCESS.

According to Wright's October 18, 2024 email to O'Regan, the formal grievance process will resolve G.R.'s complaint against L.O. and L.O.'s complaint against G.R.  According to an email from counsel for the School District, the formal grievance process will also resolve complaints of sexual harassment by G.R. against D.F., J.F. and R.W. and complaints of sexual harassment against G.R. by D.F., J.F. and R.W.  The School District has requested that L.O., as an informal resolution of G.R.'s complaint, agree *inter alia,* to a two (2) day out-of-school suspension.

L.O. has a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1985). The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal

9

requirements of the Clause must be satisfied. W*isconsin* v. *Constantineau*, 400 U.S. 433, 437 (1971). Further, a suspension could "damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Goss*, 419 U.S. at 575, 95 S. Ct. at 736.

"At the core of procedural due process jurisprudence is the right to notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).

In sum, there is no dispute that a student at a public high school such as Central Bucks High School - South is entitled to procedural due process in a disciplinary action against him. The more difficult question is what process is due.

The answer to that question begins with the three factors identified by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 903 (1976). The Supreme Court held that in determining what process is due, a court must consider 1) the private interests at stake; 2) the governmental interests at stake, including the government function involved and the fiscal and administrative burdens entailed by additional or substitute requirements; and 3) the fairness and reliability of the existing procedures and the probable value, if any, of any additional or substitute procedural safeguards.

With regard to the first *Matthews* factor, the interest of O'Regan and L.O. in having a meaningful opportunity to be heard is very high. As the Supreme Court observed in *Goss*, an unwarranted suspension recorded on a student's disciplinary record may deprive the student of his or her good name, reputation, honor, or integrity as well as interfere with later opportunities for higher education and employment.

In a Title IX proceeding, the second *Matthews* factor has been made irrelevant by the provisions of Title IX and the extensive regulations adopted by the Department of Education that govern proceedings under Title IX.

The remaining *Matthews* factor, the fairness and reliability of the existing procedures and the probable value, if any, of any additional or substitute procedural safeguards, is the critical factor to be decided by the Court.

The School District has notified L.O. that he is a respondent in a grievance proceeding in which G.R. is the complainant. The School District has also notified D.F., J.F. and R.W. that they are all respondents in complaints filed by G.R. that will be decided in the same grievance proceeding by the same decision-maker who decides G.R.'s claim against L.O.

The School District has also notified G.R. that she is a respondent in claims filed by L.O., D.F., J.F. and R.W. and that those claims will be decided in the same grievance proceeding as her claims against the male students by the same decision-maker.

It is obvious that L.O. might not want to offer evidence and arguments to the decision-maker in a grievance proceeding in which L.O. was defending himself from claims made by G.R. if the same decision-maker was to consider in the same proceeding evidence and arguments L.O. might make as the complainant in a claim against G.R. By forcing L.O. as a respondent to forego presenting evidence to the decision-maker because that evidence might adversely affect his position as a complainant and vice versa, the School District has prevented L.O. from being heard in a meaningful way in either context. What the School District has done is equivalent to one lawyer being forced to represent two clients and, in order to advance the interest of one client, the lawyer

chooses to present evidence to the decision-maker that while favorable to one clients, is detrimental to the lawyer's other client.

The grievance procedure adopted by the School District will clearly affect the fairness and reliability of the decisions in both L.O.'s claim against G.R. and G.R.'s claim against L.O.  Conversely, a grievance procedure in which one decision-maker hears and decides only the claim in which L.O. and the other male students are respondents in claims made by G.R. and a different decision-maker decides only the claims of the male students against G.R. will ensure that the decisions made after each decision-maker has an opportunity to hear and consider all the relevant evidence will be fair and reliable.

      **C.**      **THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION BECAUSE O'REGAN AND L.O. ARE LIKELY TO SUCCEED ON THE MERITS AND TO PREVENT L.O. FROM SUFFERING IRREPARABLE HARM.**

Federal Rule of Civil Procedure 65 authorizes the Court to issue a preliminary injunction.  To obtain a preliminary injunction, the moving party must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.  *Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017), citing *Del. River Port Auth. v. Transamerican Trailer Transport*, *Inc.,* 501 F.2d 917, 919-20 (3d Cir. 1974) (citations omitted).

With regard to the first requirement, Plaintiff only needs to establish a "likelihood" of success on the merits and not that it is more-likely-than-not that he will be

successful on the merits, *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc).

The ultimate questions to be decided by this Court are whether there is a lawful Title IX proceeding and if there is, whether forcing L.O. to proceed as both a complainant and respondent before the same decision-maker violates the Due Process Clause.

With regard to the first question, the Title IX regulations clearly define the steps required to begin a Title IX proceeding. First, and most basically, there must be a student who alleges that he or she was sexually harassed since Title IX only applies to claims of sexual harassment and not, as the School District apparently believes, to claims of harassment based on age or disability or general claims of bullying. After the School District receives either the student's written and signed formal complaint or a written formal complaint signed by the Title IX coordinator, the formal complaint is forwarded for investigation to a Title IX investigator.

At a hearing on this motion, L.O. will present evidence that no student on bus 357 made any complaint of being sexually harassed before Ms. Opdyke began her investigation on October 2, 2024. The evidence will also show that if Wright's October 18, 2024 Notice to O'Regan and L.O. is considered a formal complaint, Ms. Opdyke's investigation including her review of bus video footage and interviews with various students was unlawful under the Title IX regulations. In short, O'Regan and L.O. have established a likelihood of success on the merits of their claim that the ongoing Title IX proceedings are unlawful.

Further, the Title IX regulations guarantee an accused student significant due process rights including a right to an attorney, a right to a presumption of non-

13

responsibility, a right to participate in a formal grievance process and the right to an independent unbiased decision-maker.

The above evidence establishes a reasonable probability of eventual success by O'Regan and L.O. in the litigation and satisfies the first prerequisite for the issuance of a preliminary injunction set forth in *Reilly*.

The second *Reilly* prerequisite requires that O'Regan and L.O. establish that they will be irreparably injured if relief is not granted. As set forth above, the School District is pursuing a rogue Title IX proceeding in which L.O. will be severely limited in the evidence he can present both in defense of G.R's charges and in support of his charges against G.R. because the School District intends to have a single decision-maker resolve all of the outstanding charges.

There can be no doubt that as the Supreme Court recognized in *Goss*, an unwarranted suspension will cause L.O. irreparable injury in connection with future higher education opportunities or employment pursuits.

The other harms identified by the Third Circuit in *Reilly* are not relevant to the instant matter and do not need to be considered by the Court. Even if relevant, these factors, the possibility of harm to other interested persons from the grant or denial of the requested injunction and the public interest do not weigh against this Court issuing the requested injunction.

The subject of the Title IX grievance procedure is a complaint conjured up by Ms. Opdyke, not a complaint filed by any of the involved students. If this Court enjoins the Title IX grievance process instigated by Wright, no harm will befall any of the involved students or anyone else. Further, the matter before this Court is solely a private dispute

14

between O'Regan and the School District that is of no interest to the public at large and, therefore, no member of the public will be affected in any way if the Court grants the requested injunction.

O'Regan and L.O. have demonstrated that they are likely to succeed on their claim that if the School District is allowed to proceed with its unlawful Title IX investigation and flawed grievance process, they will be irreparably injured and that there are no other interested persons or members of the general public who will be affected in any way by the issuance of the requested injunction.

This Court should issue the requested injunction so that L.O. will not face the possibility of being disciplined as the result of an unlawful proceeding and without being afforded a meaningful opportunity to be heard on all the relevant issues.

### III.   CONCLUSION

For the reasons set forth above, O'Regan and L.O. request that the Court schedule a prompt hearing on their Motion for a Preliminary Injunction and thereafter issue an injunction prohibiting further proceedings by the School District against O'Regan and

L.O. with regard to the events set forth in the October 18, 2024 Notice of Complaint Received.

                                                  Respectfully submitted,

                                                  **DESSEN, MOSES & ROSSITTO**

Dated: December 5, 2024                By:  */s/ David S. Dessen*
                                                        DAVID S. DESSEN, ESQUIRE
                                                        Attorney ID # 17627
                                                       Attorney for Plaintiff

                                                       600 Easton Road
                                                       Willow Grove, PA  19090
                                                      (215) 496-2902
                                                       ddessen@dms-lawyer.com

**CERTIFICATION OF SERVICE**

I hereby certify I electronically filed the foregoing Motion for a Preliminary Injunction with the Clerk of Court using the CM/ECF system, and served a copy via first class mail, postage prepaid on:

>Central Bucks School District
>20 Welden Drive
>Doylestown, PA  18901

Dated: December 5, 2024                         */s/ David S. Dessen*
                                                                        DAVID S. DESSEN, ESQUIRE